Mr. Chief Justice JohwsoN delivered the opinion of the Court. The question first presented involves the merits of the demurrer interposed by the defendant Nunn. He demurred to the bill for multifariousness, which was sustained by the chancellor and a decree rendered in his favor accordingly. To lay down any rule universally applicable as to multifariousness, or to say what constitutes multifariousness, as an abstract proposition, is, (it has been said) upon the authorities, utterly impossible. The cases upon the subject are extremely various, and the court, in deciding them, seems to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule. The only way of reconciling the authorities upon the subject is by adverting to the fact that, although the books speak generally of demurrers for multifariousness, yet in truth such demurrers may be divided into two kinds, 1. Frequently the objection raised to the bill, though termed multifariousness, is, in fact, properly speaking, a misjoinder; that is to say, the cases or claims asserted in the bill, are>of so different a character that the court will not permit them to be litigated in one record. It may be that the plaintiffs and the defendants are parties to the whole transactions, which form the subject of the suit, but nevertheless those transactions may be so dissimilar, that the court will not allow them to be joined together, but will require distinct records. 2. But what is more familiarly understood by multifaiousness, as applied to a bill, is where a party is brought as a defendant upon a record, with a large portion of which and of the case made by which he has no connection whatever. In such a case he has a right to demur (and so the old form of demurrer was) and to state the evil of thus uniting distinct matters in one record to be that it put the parties to great and useless expense. Such an objection could have no application to the case of a mere misjoinder of different causes of action between the same parties, plaintiffs and defendants, and none others. See Storys Eq. Pl. p. 406, 407. The point now to be decided is whether the bill is multifarious, accordingjto the principles stated. Are the cases or claims, asserted in the bill, so different in their character that they cannot with convenience or safety be litigated in one record, or is the party demurring brought upon the record with a large portion of which and of the case made by which, he has no connection whatever ? We think it clear that he does not fall within either branch of the proposition. The claim set up and esserted by the bill consists simply and solely of an equitable estate in a certain specified tract of land and the sole object is to disencumber it by vacating and setting aside two separate sales, under which the defendant, Nunn, claims to hold it. It will be conceded that, in-order to effectuate the intention of the bill, it will become necessary to vacate two separate and distinct sales, the one of the entire, and the other of a portion of the property in dispute, yet they both relate to the same subject matter and directly connect the defendant with it, by charging him as the purchaser in both instances, and as claiming adversely to the complainant. This bill therefore cannot be said to be demurrable for multifariousness, and in case the sales referred to are void as alleged by the claimant there can be no question in respect to her equity as against the defendant, Nunn. The next point involves the correctness of the action of the chancellor in reference to the joint and several demurrer of the defendants, Scott and Bradley. They deny, in general terms, the entire enquity of the bill, and insist that they are not bound to make any response to the allegations contained in it. The bill charges that Bradley was the true and equitable owner of the property at the time Gartland purchased and that Nunn of whom, he made the purchase was not the owner, but that he merely held the same in secret trust for Bradley, and also that Nunn transferred the notes of Gartland, made to himself to secure the purchase money, to Bradley, and that Gartland in his lifetime transferred certain other notes to Bradley in discharge and payment of his own so assigned by Nunn, so far as they ivould go, and then entered into a new arrangement with Bradley for the payment of the residue, by which he obtained an extension of time beyond that fixed by the proviso contained in the title bond for the sale by the trustee in case of non-payment. If these allegations be true, it is manifest that Bradley is a party in interest and that the complainant is entiled to have the nature and extent of that interest investigated and ascertained, so as to remove, if possible, every incumbrance from her title. Besides, the bill charges that the notes originally executed by Gart-land to Nunn for the purchase money, were transferred to Bradley and that upon receiving part payment, he extented the time for the payment of the residue and then in violation of his contract, caused the land to be sold before the time agreed upon had arrived. If this be true it was, most unquestionably, a fraud upon the rights of Gartland, and from which a court of equity would be competent to afford him relief. If the charge in the bill, in respect to the defendant, Bradley, be true, and that they are so, stands admitted by the demurrer, there can be no doubt but that he is a proper party and that in equity he may be compelled to come in and to respond to the merits of the bill. But it is contended that Scott has no interest in the subject matter and that no relief is prayed or could be had against him and that therefore no equity is disclosed as against him. The allegation is, that in violation ,of the contract between Gartland and Bradley, he in combination with Bradley and Nunn to defraud Gartland, proceeded to sell the property in controversy, and that he not only made the sale before the time agreed upon, but that he also materially varied the terms which had been agreed upon and stipulated between the parties. It is true, as a general rule, that a mere agent, who has no interest in the suit, ought not to be made a party, but if, in such case, there be any charge of fraud connected with the transaction in which the agent participated and it is so charged in the bill, then he may properly be made a party, for even if no other decree would be warranted by the circumstances of the case against him he might be decreed to pay the costs of the suit, if his principal should happen to be or should become insolvent. See Story’s Eq. Pl. p. 200 and the cases there cited. It is also charged that Scott, the trustee, executed the trust by selling the property after the death of Gartland, and that therefore the sale so made is void. This presents the question of the nature of the power with which he was clothed by the instrument by which the trust was created. Was he a mere attorney in fact cJothed simply with a naked power, which ceased with the life of the person making it, or was his a power so coupled with an interest as to survive the party conferring it and to enable him to execute it after his death. The trust in this case was created by a clause contained in the bond executed by Nunn, the vendor, to Gartland, his vendee, conditioned for a conveyance of the legal title upon the payment of the purchase money. The trustee as a matter of necessity was appointed by the vendee as he was designed to act upon his interrst in the estate in case of his failure to comply with the conditions of the instrument of sale. What then was the object of the appointment of the trustee and what the extent of his power ? The object was manifestly to save the vendor from the delay and expense necessarily incident to a suit in chancery to assert his lien and to subject the land to sale, in case of non-payment according to the stipulations of the bond; and the extent of the trustee’s power could not possibly exceed that of an attorney in fact, as he most clearly had no interest either in the thing itself or in the proceeds to be derived therefrom. This court, in the case of Yeates et al. vs. Pryor, (January term, 1850) said, “ The general rule that a power ceases with the life of the person giving it admits of one exception. If the power be coupled with an interest it survives the person giving it and may be executed after his death. As the position is laid down too positively in the books to be controverted it becomes necessary to inquire what is meant by the expression ‘a power coupled with an interest.’ Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power ? We hold it to be clear that the interest which can protect a power after the death of the person who ■creates it, must be an interest in the thing itself. In other words, the power must be grafted on the estate in the thing. A power coupled with an interest is a power which accompanies or is connected with an interest. The power and the interest are united in the same person.” The instrument creating the trust in this case first vested an equitable estate in Gartland and then provided that Scott who was designated as a trustee in case of non-payment of the purchase money according to the terms stipulated should proceed to sell the interest 6f Gartland, and that such -sale should operate as a discharge of the obligation of Nunn to convey to him and instead thereof he should convey the whole title directly to the purchaser under the trustee’s sale. It is true that uhder the somewhat peculiar provisions of the instrument conveying the equitable title to Gartland and creating the trust to be executed in case of his non-compliance, the trustee whether the party for whom he should act were dead or alive, could not execute a conveyance of his interest either in his own name or in that of his principal, and as such would not fall within one of the reasons why he could not act after his principal’s death, yet inasmuch as he cannot be said to possess any interest whatever either in the thing upon which the power is to be exercised or in the proceeds to be derived from the sale of the same, he is brought fully within the great and controling reason of the law. From this view of the law arising upon the facts set forth and charged in the bill, it is clear that if substantiated by the necessary proof, the sale whether fraudulent or not is a mere nullity, for the want of legal authority in the trustee to make the sale at the time he is represented to have done so. According to these views and principles it is manifest that the chancellor erred in sustaining the demurrers of the defendants Nunn, Scott and Bradley. But it is insisted by the counsel for the appellees that even conceding that the sale by the trustee did not have the effect to pass Gartland’s interest back and revest it in Nunn, yet that the other sale by the sheriff had that effect and that consequently the complainant has no cause of action. The legal effects of the sale by the sheriff cannot possibly be such as claimed, as the judgment and execution under which he sold did not purport to cover the whole extent of the premises sold by the trustee. it is objected to the bill that it is demurrable on account of a misjoinder of parties as defendants. That some of the defendants originally embraced had no manner of interest in the subject matter of the suit and were consequently improperly brought upon the record is too clear to admit of a doubt, yet as they did not seek to avail themselves of the objection, it is not a matter that can benefit others who are shown to have an interest. The objection of misjoinder of parties as defendants is a mere personal privilege, and consequently those only can demur for that cause who are improperly joined. See Story’s Eq. Pl. p. 417. It is therefore ordered, adjudged and decreed that the decree of the chancellor sustaining the demurrers of the defendants Nunn, Scott and Bradley, and dismissing the bill as to them be and the same is hereby reversed, annulled and set aside, and it is further ordered that the cause be remanded to the Ouachita circuit court to be proceeded in according to law and not inconsistent with this opinion. Mr. Justice Scott not sitting.